Nixon v. Downey & Wolverton.

---

## NIXON v. DOWNEY & WOLVERTON.

1. **Principal and Agent:** UNDISCLOSED AGENCY: LIABILITY OF PRINCIPAL. If not otherwise instructed by his principal the agent may purchase in his own name, but for any agreement to pay he becomes personally liable to the vendor. That his principal was himself an agent for another would not relieve him of liability to his own agent.

2. **Practice:** MOTION FOR NEW TRIAL: WAIVER. Where after a judgment upon a special verdict, motions are made for a new trial, and for a judgment on the general verdict, the latter motion will imply a waiver of the former.

3. **Practice in the Supreme Court:** CHANGE IN RECORD: REHEARING. The Supreme Court will not, upon rehearing, consider changes and amendments in the abstract, when such amendments show grounds for a different decision.

*Appeal from Taylor District Court.*

WEDNESDAY, SEPTEMBER 18.

THE plaintiff averred in his petition, in substance, that the defendants are partners; that as their agent he purchased for them one hundred and twenty-three hogs, at three dollars and

fifty cents per hundred pounds; that they authorized him to
pay for them with his own money, and that he did so; that
they refused to receive the hogs and pay for them, and that
by such refusal he was damaged in the sum of five hundred
dollars.    There was a trial by jury, and verdict for the plain-
tiff in the sum of three hundred and sixty-one dollars and
seventy-seven cents.    There was also a special verdict by
which the jury found, among other things, in substance, that
the plaintiff did not buy the hogs in the defendants' name;
that he invested his own money in them by permission of the
defendants, and that the jury did not know whether plaintiff
knew that defendants were agents of a firm at St. Joseph or
not.

The defendants filed a motion for a judgment in their favor
on the special findings, notwithstanding the general verdict.
They also filed a motion for a new trial, to be ruled on in case
the motion for judgment on the special findings should be
overruled.

The court sustained the first motion, and rendered judgment
for defendants.    The plaintiff appeals.

*Holliday & Flick*, for appellant.

*McCann & Brown*, for appellees.

ADAMS, J.—I.    It is insisted by the defendants that the
special findings are inconsistent with the general verdict in

1. PRINCIPAL
and agent:
undisclosed
agency: lia-
bility of prin-
cipal.

three respects—*First*, in that the plaintiff did not
purchase the hogs in the name of the defendants;
and, *second*, that he paid for them with his own
money; and, *third*, that it does not appear affimatively that
plaintiff did not know that the defendants were agents for a
firm in St. Joseph.    The evidence tended to show that the
plaintiff when he purchased the hogs did not disclose his
agency, if there was any; that the defendants refused to receive
and pay for the hogs; and that the plaintiff then paid for
them with his own money, and that the defendants were not

buying hogs on their own account, but for the firm of Pinger & Co., in St. Joseph.

The defendants contend that if the plaintiff did not purchase in the name of the defendants, he cannot now be heard to say that he purchased for them. The argument is that by not disclosing his agency he bought in his own name, and thereby exposed the property to the risk of being attached for his own debts; that in so doing he violated his contract of agency, if there was any, which implied that he was to purchase in the name of his principals, and that he thereby released his principals from the fulfillment of the contract upon their part.

The fallacy of the argument consists in assuming that the plaintiff was obligated to purchase in the name of his principals in the absence of instructions to that effect. Possibly the plaintiff could purchase to better advantage in his own name. If he was not instructed to the contrary it must be deemed to have been left to his discretion. The rights of a principal to property purchased for him by his agent are precisely the same whether the agency is disclosed or concealed.

As to the payment by plaintiff of his own money it is sufficient to say that he became liable to pay it because he did not disclose his principals. He simply discharged that liability. He now claims to recover for the damage sustained by him by the non-fulfillment of the contract by the defendants. It will be observed that he is not seeking to recover for advances as such. If it were so it might be important to inquire whether the advances were officiously made (Story on Agency, § 336,), and whether the finding of the jury that defendants permitted the plaintiff to make the advances would preclude the idea that they were made by him officiously. But no such question arises in the case.

Finally, it is said that the evidence should have been such that the jury could determine that the plaintiff did not know that the defendants were agents for Pinger & Co. The plaintiff, however, might have known that they were agents for Pinger & Co., yet if they employed the plaintiff to purchase

Nixon v. Downey & Wolverton.

not for Pinger & Co. but for themselves, they would be liable. We think that the court below erred in rendering judgment for the defendants upon the special findings, as against the general verdict for the plaintiff.

II.   The case must be remanded, and the question arises whether it should be remanded for a ruling upon the motion for a new trial, or for judgment on the general verdict. The motion for a judgment and the motion for a new trial are, of course, inconsistent, so far as the action is concerned which they are intended to invoke.   In asking the court to sustain the motion for judgment the defendant virtually asked the court not to sustain the motion for a new trial.   That was certainly a waiver of the motion for the time.   We think it should have the same effect as withdrawing it from the files.   Had that been done it could not now be filed, because it would be equivalent to filing a new motion for a new trial, and the time has expired within which that can be done.   That the waiver, temporarily, of a motion for a new trial should have the same effect as a withdrawal, will appear more obvious if we consider that it is the right of the successful party to have an immediate ruling upon it.   If the unsuccessful party puts it out of the power of the court for a time to rule upon it, its force as a motion is, at least, suspended, and we see no reason why anything should be claimed from the fact that it remains in the meantime upon the files.   The case will be remanded for judgment upon the general verdict.

*2. PRACTICE: motion for new trial: waiver.*

REVERSED.

ON REHEARING.

BECK, J.—A rehearing was ordered in this case upon the petition of defendant.   It has been again argued and submitted to the court.   The ground upon which defendants base their objection to our former opinion is that the court below, in fact, overruled defendants' motion for judgment in their favor upon the

*3. PRACTICE in the supreme court: change in abstract: rehearing.*

special verdict, and sustained the motion for a new trial on the ground that the general verdict was not supported by the testimony. It is not claimed that the record brought to this court, upon which our decision is founded, shows the facts to be as alleged, but that in failing to do so it is not in accord with the facts. In other words our opinion truly recites the record, but the record itself is incorrect, and fails to present truly the action of the court below in its rulings in question.

It is now shown that, since our opinion was filed, the court below, upon a motion of defendants, has corrected its record so as to accord with the facts as claimed by defendants, and this corrected record is brought before us as the record of this case. The plaintiff moves in this case for a continuance on the ground that he has appealed from the order of the court below correcting the record, and his appeal is now pending and will be submitted to us at the next term held at Council Bluffs. If we are to act upon the amended record this application would seem to be based upon reason, for we might, upon the appeal involving the action of the court in correcting the record, reverse that action and set it aside. In that case, if we should reach a conclusion differing from the decision announced in our first opinion, we would be under the necessity of changing back to our first ruling. In other words, as the record of the court below should be changed, our decisions must oscillate. This condition of things is inconsistent with the law governing proceedings in this court, and the facts we have stated serve as a fit introduction to the consideration of the question presented in the petition for rehearing. That question is this: Will this court, after a cause has been decided, permit, upon a petition of rehearing, the record to be changed and thus authorize new questions to be introduced in the case?

The parties by submitting the case upon the record admitted its correctness. The questions determined in our opinion, and no other or different, were involved in the record. It is not claimed that our decision upon these questions is incor-

rect; but by the change in the record of the court below new questions are presented—a new case is made. We have frequently held that we will not consider changes and amendments of the abstract, upon petitions for rehearing, when such amendments show grounds for a different decision. *Cramer v. City of Burlington*, 45 Iowa, 627. Other decisions of like effect do not appear in the reports, for the reason that they were made in overruling petitions for rehearing. These rulings are based upon the doctrine that the same case must be submitted upon rehearing that was decided by the court. Were the rule otherwise a premium would be offered to the careless practitioner, and invitation would be given to assail the records of the courts.

The hardship of the particular case is no ground for granting relief to defendants by permitting them to present a new case to us upon rehearing. If they have no relief it is chargeable to the negligent management of their case.

It may be, but the point we do not decide, that our decision upon the record which was before us will not be in the way of a judgment in the court below in accord with the amended or new record.

We discover no grounds upon which our decision can be disturbed; we, therefore, adhere to it.